UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOYCE CORINE HATHCOCK FISHER | CIVIL ACTION |
| VERSUS | NO: 09-4250 |
| JERRY WAYNE FISHER | SECTION: "S" (3) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Joyce Corine Hathcock Fisher's "Motion to Remand" is **GRANTED**, and the case is **REMANDED** to the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana. (Docket # 15.)

**IT IS FURTHER ORDERED** that Joyce Corine Hathcock Fisher's request for attorney's fees is **DENIED**.

## I. BACKGROUND

On January 8, 1986, Joyce Corine Hathcock Fisher and Jerry Wayne Fisher obtained a divorce in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana. In the divorce decree, Joyce was awarded "one-half (½) of the proceeds from any FOSCO Employee's Trust and/or L.B. Foster Company trust plan, voluntary investment plan, thrift plan or retirement plan payable to Jerry Wayne Fisher at the time of his retirement or termination

from said company or upon his death, attributable to the time of the marriage, August 6, 1977 through July 13, 1984." The judgment provided that "[t]his judgment will hereby become a permanent part of the company files in connection with such plans and the company is hereby put on notice that Joyce Corine Hathcock Fisher, must be notified of such benefits becoming due and payable. An accounting of such plans will be required to comply with this order." L.B. Foster Company (Foster) is the administrator and the fiduciary of the employment plans. On August 31, 2001, the manager of Foster's employment and pension plans advised Joyce that Jerry had terminated employment with Foster on December 2, 1997, and the Foster accounts were rolled over into Jerry's independent IRA.

On May 20, 2009, Joyce filed a "Rule for Contempt, Damages and Attorney's Fees" in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, against Jerry and his former employer. She alleges that Foster failed to comply with the terms of the judgment by allowing Jerry to withdraw all of the proceeds from Foster's trust plan, voluntary investment plan, thrift plan or retirement plan without notice to Joyce and without providing Joyce the required accounting. Specifically, in September 1991, Foster allowed Jerry to roll over the balance of $72,301.78 from the FOSCO Employees Trust into an independent Individual Retirement Account (IRA) in Jerry's name. In January 1998, Foster allowed Jerry to roll over the balance of $107,000 from the FOSTCO Voluntary Investment Fund into an independent IRA in Jerry's name.

Foster removed the case to federal court based on federal question jurisdiction under the Employee Retirement Security Act of 1974 (ERISA), and Jerry consented to the removal. Joyce

filed a motion to remand to state court.

## II. DISCUSSION

### A. Legal standard

Motions to remand to state court are governed by 28 U.S.C. § 1447(c), which provides in relevant part: "If at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." A removal action based on federal question jurisdiction is analyzed under the well-pleaded complaint rule. See Torres v. Southern Peru Copper Corp., 113 F.3d 540, 542 (5th Cir. 1997). A defendant seeking removal bears the burden of demonstrating that jurisdiction exists. In re Hot-Hed, Inc., 477 F.3d 320, 323 (5th Cir. 2007).

### B. Federal question under ERISA

Joyce contends that the case should be remanded because the "Rule for Contempt" filed in state court does not raise a federal question. Joyce argues that the doctrine of preemption is not applicable because she is not seeking to enforce her rights under an ERISA plan, to interpret an ERISA plan, or to have a plan administrator make any determination of her rights. She argues that she seeks an award of damages as a sanction against the defendants because of their conduct in ignoring the lawful judgment, not the enforcement of ERISA benefits. Alternatively, Joyce argues that, even if the "contempt rule" is interpreted as a claim for benefits or to enforce rights under an ERISA plan, the judgment is a Qualified Domestic Relations Order (QDRO), which is exempt from ERISA preemption.

Foster argues that the case is governed by ERISA, and the domestic relations order is not

exempt from preemption because it is not a QDRO. Specifically, Foster argues that the domestic relations order does not satisfy the fourth requirement for a proper QDRO, namely to specify each plan to which the order applies.

"The Employee Retirement Income Security Act of 1974 (ERISA) permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2346 (2008); 29 U.S.C. § 1101 *et seq.*; § 1132(a)(1)(B). Section 1132(a)(1) (B) provides a civil action to recover benefits due under the terms of a plan, to enforce rights under the plan or to clarify rights to future benefits under a plan. "[C]omplete preemption exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a), and therefore is within the jurisdiction of federal court." McGowin v. ManPower Intern., Inc., 363 F.3d 556, 559 (5th Cir. 2004). "ERISA broadly preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" Manning v. Hayes, 212 F.3d 866, 870 (5th Cir. 2000) (citation omitted). "[T]he express pre-emption provisions of ERISA are deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." Pilot Life Ins. Co. v. Dedeaux, 107 S.Ct. 1549, 1552(1987).

ERISA's anti-alienation provision provides that benefits under a pension plan may not be assigned or alienated. See Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan, 497 F.3d 426, 427 (5th Cir. 2007); 29 U.S.C. § 1056(d)(1). "An assignment or alienation is defined by regulation as [a]ny direct or indirect arrangement . . . whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan

4

benefit payment which is, or may become, payable to the participant or beneficiary." Id. (quoting 26 C.F.R. § 1.401-13(a), (c)(1)(ii)). "In the marital-dissolution context, the QDRO provisions supply the sole exception to the anti-alienation provision; they exempt a state domestic-relations order determined to be a QDRO, under the standards set forth in ERISA." Id. at 430; 29 U.S.C. § 1056(d)(3)(A).

Because Joyce seeks payment of benefits from the administrator of Jerry's employee pension plan, ERISA preemption provisions apply. The remaining question is whether the state-court domestic relations order qualifies as a QDRO, which is exempt from ERISA preemption.

Section 11(d) of the "FOSCO Employees Trust" addresses the "Nonalienation of Benefits" as follows:

> (i) The interest under this Plan of any Participant or Designated Beneficiary shall not be subject to assignment, alienation, pledge, attachment, garnishment, sequestration or other legal process, or to the claims of creditors. The preceding sentence shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, as defined in Section 414(p) of the [Internal Revenue] Code, or any domestic relations order entered before January 1, 1985.

Exh. C.

"To qualify as a QDRO, a divorce decree must clearly specify the identity of any beneficiary, the particular plans affected, and the exact manner of calculating benefits." Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan, 497 F.3d at 430.; 29 U.S.C. § 1056(d)(3)(C).[1] "The requirement of clear specification is designed to spare the plan

---

[1] 29 U.S.C. § 1056(d)(3)(C) provides:
A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies--

administrator from litigation-fomenting ambiguities as to whom the beneficiaries designated by the divorce decree are." Id. (internal quotation and citation omitted). In Boggs v. Boggs, 117 S.Ct. 1754, 1763 and 1765 (1997), the Supreme Court noted "[t]he care with which Congress created the QDRO mechanism in order to give enhanced protection to the spouse and dependent children in the event of divorce or separation" and emphasized that the QDRO exception, one of only two to the anti-alienation provision, is "not subject to judicial expansion." Id. at 431. "The pivotal question is whether the dissolution order clearly contains the information specified in the statute that a plan administrator would need to make an informed decision." Hamilton v. Washington State Plumbing & Pipefitting Indus. Pension Plan, 433 F.3d 1092, 1097 (9th Cir. 2006) (internal quotations and citations omitted).

There is no dispute that the domestic relations order clearly provides information regarding the first three requirements of § 1056(d)(3)(C). The state-court judgment identifies 1) Joyce as an alternate payee of 2) one-half of the proceeds of Jerry's employee plan 3) between August 6, 1977 through July 13, 1984. As to the fourth requirement, the domestic relations order adequately specifies the particular plans affected. While it would be preferable that the order name the plans in which Jerry participated, the order states that Joyce is entitled to one-half of the proceeds from "**any** FOSCO employee's trust and/or LB Foster Company Trust Plan,

---

    (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order.
    (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
    (iii) the number of payments or period to which such order applies, and
    (iv) each plan to which such order applies.

voluntary investment plan, thrift plan, or retirement plan payable to Jerry Wayne Fisher."
(Emphasis added.) This is all of the information that a plan administrator would need to make an informed decision as to Jerry's participation and Joyce's rights as an alternate payee.

Accordingly, the state-court domestic relations order qualifies as a proper QDRO, and the judgment is exempt from ERISA preemption. The court lacks subject matter jurisdiction; therefore, the motion to remand is granted, and the case is remanded to the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana.

## C. Attorney's fees

Joyce moves to recover attorney's fees incurred in filing the motion to remand. The request for attorney's fees is denied. Notwithstanding the remand, there was an objectively reasonable basis for removal. See Martin v. Franklin Capital Corp., 126 S.Ct. 704, 711 (2005).

New Orleans, Louisiana, this __2nd__ day of December, 2009.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**